IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN WESLEY NICHOLS, )
)
    Plaintiff, )
)
v. ) 1:14CV536
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social )
Security, et al., )
)
)
    Defendants. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, John Wesley Nichols, seeks review of a final decision of the Commissioner of Social Security denying his claims for social security disability benefits and supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 9, 17 and 21.) Defendant has also filed a Motion to Dismiss Improper Parties (Docket Entry 6) and Plaintiff, in turn, has also filed a "Motion to Amend Improper Party" (Docket Entry 19).

## I. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income in November of 2010 alleging a disability onset date of October 15, 2010. (Tr. 22, 198-205.) The applications were denied initially and again upon reconsideration. (*Id.* at 137-42, 145-152.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 154.) At the November 8, 2012 hearing were

Plaintiff, his attorney, and a vocational expert ("VE"). (*Id.* at 40-70.) On February 15, 2013, the ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 22-34.) On April 24, 2014 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 11-16.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.* The Court notes too that Plaintiff is proceeding *pro se* in this matter, and it has therefore endeavored to liberally construe his pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III. THE ALJ'S DISCUSSION

The ALJ followed the well-established five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). Here, the ALJ first

2

determined that Plaintiff had not engaged in substantial gainful activity since October 15, 2010, the alleged onset date. (*Id.* at 24.) The ALJ next found that Plaintiff suffered from the following severe impairments: learning disability; borderline intellectual functioning; drug addiction and alcoholism; and major depressive disorder with psychotic features. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one listed in Appendix 1. (*Id.* at 26.) Prior to step four, the ALJ determined Plaintiff's RFC based on the an evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 28-32.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to work at all exertional levels, so long as he was limited to (1) no fast-paced work, (2) simple, routine, repetitive tasks, (3) with stable hours and locations. (*Id.* at 28-29.) At the fourth step, the ALJ determined that Plaintiff was able to perform his past relevant work as a furniture mover. (*Id.* at 32.) The ALJ also rendered an alternative step five finding, determining that, given Plaintiff's age, education, work experience, and RFC, there were other jobs that Plaintiff could perform. (*Id.* at 32-33.) Consequently, the ALJ determined that Plaintiff was not disabled from the alleged onset date (October 15, 2010) through the date of the decision (February 15, 2013). (Tr. 33-34.)

## IV. ANALYSIS

Plaintiff's Motion for Judgment on the Pleadings states, in its entirety:

> Plaintiff's Response to/objection of the Commissioner's decision or any aspect to the record which counsel contends is erroneous.
>
> ALJ, Emanuel C. Edwards, who heard [Plaintiff's] case for

3

> disability on February 15, 2013, acted with bias, not based on
> actual doctor's recommendations and solely on the basis of the
> APPEARANCE of [Plaintiff] who clearly in the microphone
> stated he was mentally retarded, then openly stated, a big guy like
> you could push a lawn mower. The attorney he had would not
> let him use the bathroom and was in great distress to answer, he
> also was not in full understanding of what being Affirmed in
> Obama meant, but only understand telling the truth with his hand
> on the bible of which is his religious preference. Along with
> new document that were not allowed to be submitted from
> psychiatrists and physicians.

(Docket Entry 17 at 1-2.) The Court interprets this as an allegation that (1) Plaintiff did not receive a fair and impartial hearing before the ALJ and (2) the Decision of the ALJ is not supported by substantial evidence, because it did not take proper account of his allegations of his intellectual disability.[1] As explained below, while Plaintiff's first argument fails, his second is persuasive.

### A. The Record Does Not Demonstrate Judicial Bias.

The right to procedural due process applies to social security benefits determinations, *Richardson v. Perales*, 402 U.S. 389, 401-402 (1971), and an "impartial decision maker is an essential element of due process," *Bowens v. v. N.C. Dep't of Human Res.*, 710 F.2d 1015, 1020 (4th Cir. 1983) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). Because "Social Security proceedings are inquisitorial rather than adversarial," the ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530

---

[1] Effective September 3, 2013, the Agency replaced the term "mental retardation" in Listing 12.05C with "intellectual disability" since the former term "has negative connotations, has become offensive to many people, and often results in misunderstandings about the nature of the disorder and those who have it." *Change In Terminology: "Mental Retardation" to "Intellectual Disability"*, 78 Fed.Reg. 46,499 (Aug. 1, 2013). Unless quoting another source or authority, the court uses the updated term here and recognizes that this change does not alter any of the arguments made by either party.

4

U.S. 103, 110-111 (2000). The SSA's regulations implement this principle: the hearing is to be "conduct[ed] . . . in an informal, nonadversary manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Nonetheless, "[a]n individual is not disqualified [from judging a case], however, because he has formed opinions about a case based on his or her participation in it." *Bowens*, 710 F.2d at 1020. It is only when remarks "display a deep-seated favoritism or antagonism that would make fair judgment impossible" that bias may be established. *Liteky v. United States*, 510 U.S. 540, 555 (1995).[2] "Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display." *Id.* at 555-56. Accordingly, a plaintiff alleging ALJ bias bears a "heavy burden" of proof. *Simpson v. Macon County, N.C.*, 132 F. Supp. 2d 407, 411 (W.D.N.C. 2001)). ALJ's are entitled to the same "presumption of honesty and integrity" as are judges. *Morris v. City of Danville*, 744 F.2d 1041, 1044 (4th Cir. 1984). As such, prejudice or bias must be evident from the record and not based on speculation or inference. *Hucks v. Colvin*, No. 2:12-cv-76, 2013 WL 1810658, at *7 (N.D.W.Va. Apr. 3, 2013) (citing *Navistar Int'l Trans. Corp. v. United States E.P.A.*, 941 F.2d 1339, 1360 (6th Cir.1991)).

The undersigned has reviewed the hearing transcript in this case. (Tr. 40-70.) It contains no remarks or any conduct by the ALJ that would bias or prejudice Plaintiff, or that somehow stymied the development of the evidentiary record. Any "expressions of impatience, dissatisfaction, annoyance, [or] even anger," demonstrated by the ALJ during the evidentiary hearing were "within the bounds of what imperfect men and women . . . sometimes

---

[2] Another means of establishing bias is by showing that a judicial opinion derives from an extrajudicial source, but there is absolutely no indication that this occurred here. *See Liteky*, 510 U.S. at 555.

display" and do not establish bias. *Liteky*, 510 U.S. at 555-56. Additionally, despite his assertion to the contrary, nothing in the transcript suggests that Plaintiff was prevented from excusing himself to the restroom. As for Plaintiff's assertion that the ALJ insisted that he could push a lawn mower, it does not establish bias. At one point in the hearing, the ALJ gave Plaintiff a few examples of "simple" work in response to Plaintiff's statement that he was completely disabled because he "ain't got the brain." (Tr. 47.) However, the ALJ's statement that there were simple jobs, like cutting grass and shoveling snow, was not improper. (*Id.*) Plaintiff was also represented by an attorney at the hearing, who questioned Plaintiff without interruption. (Tr. 58-59.) In short, Plaintiff has failed to meet his burden in demonstrating bias in this matter.

### B. The ALJ's 12.05C Analysis Is Not Susceptible to Judicial Review.

Plaintiff's argument that the ALJ's assessment of his allegations of intellectual disability is not supported by substantial evidence is more persuasive. This is because, in analyzing the strength of Plaintiff's argument, it is unclear whether the ALJ properly assessed whether Plaintiff failed to meet or equal the requirements for an intellectual disability set forth in 12.5C of the Listings. (Docket Entry 12 at 5.)

That listing is described, and its applicable criteria are set forth, as follows:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

6

. . . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Where, as here, the paragraph C severity criteria are at issue, the Fourth Circuit has described the first showing—deficits in adaptive functioning initially manifested during the developmental period—as "Prong 1." *Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012). The Prong 1 diagnostic criteria for an intellectual disability includes two components—deficits in adaptive functioning *and* an onset before age 22—that must both be satisfied in order for the Listing to apply. *Id.* at 475 (commenting that an ALJ's finding that neither component was satisfied would be upheld if "[e]ither finding alone" was supported by substantial evidence). The Fourth Circuit has also described the conjunctive paragraph C requirements—a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function—as "Prong 2" and "Prong 3." *Id.* at 473.

Here, in his decision, the ALJ evaluated Plaintiff's claim that he met this listing and concluded as follows:

> No treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment.

. . . .

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing[] . . . 12.05.

7

> Turning back to listing 12.05, the requirements in paragraph A are met when there is mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded. In this case, these requirements are not met because the claimant has undergone testing for standardized measures of intellectual functioning and has not reported problems with personal care or personal needs (Exhibit 7f).
>
> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal performance, or full scale IQ of 59 or less. In April 2011, Dr. Jake E. Ricketson, Psy.D., a consultative examiner, noted that the claimant had a full-scale IQ score of 65. Accordingly, the undersigned finds that "paragraph B" of 12.05 is not met.
>
> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a significantly subaverage intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22); a valid verbal performance; or full scale IQ of 60 through 70; and a physical or other mental impairment imposing additional and significant work-related limitation of function. In the present case, elementary standardized test records reveal the claimant's cognitive ability in his developmental period, prior to the age of twenty-two (Exhibit 1E). His national percentiles achievement included a range of 4 percent to 53 percent; a wide range that would indicate a learning disability, but not mild mental retardation (Exhibit 1E, pp. 2-10).

(Tr. 26-27.)

From this, it is evident that the ALJ did not meaningfully address all three prongs of 12.05C, but rather apparently only focused on Prong 1, deficits in adaptive functioning prior to the age of 22. Yet, it is important to note that while the ALJ did not explicitly address Prongs

8

2 and 3, they do indeed appear met here, because Plaintiff demonstrated a verbal comprehension performance of 68 and a full scale IQ of 65 (Prong 2) and an additional and significant work-related limitation of function, major depressive disorder with psychotic features (Prong 3).[3] (Tr. 362.) Consequently, the question of whether the ALJ's Prong 1 analysis is susceptible to judicial review and supported by substantial evidence is critical to the outcome of his claim.

## I. Deficits in Adaptive Functioning Prior to the Age of 22

While Prong 1 of Listing 12.05C "does not expressly define 'deficits in adaptive functioning' . . . '[a]daptive activities' are described elsewhere in the [Mental Disorders] Listing . . . as 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.'" *Hawley v. Astrue*, No. 1:09CV246, 2012 WL 1268475, at *5 (M.D.N.C. Apr. 16, 2012) (citing *Blancas v. Astrue*, 690 F. Supp. 2d 464, 476 (W.D. Tex. 2010) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.05 and 12.00(C)(1)); *accord Hager v. Astrue*, No. 2:09CV1357, 2011 WL 1299509, at *2 (S.D.W.Va. Mar. 31, 2011) (unpublished).[4]

---

[3] The undersigned recognizes that an ALJ may discount an IQ score for a variety of reasons. *Hancock*, 667 F.3d at 474-75. Here, it is not clear whether the ALJ intended to discount Plaintiff's IQ results. On remand, the ALJ may specifically address the issue of the validity of Plaintiff's IQ test results.

[4] Though Listing 12.05 does not specifically define "adaptive functioning," SSA regulations provide that "[t]he definition of [intellectual disability] . . . in [the] listings is consistent with, if not identical to, the definitions of [intellectual disability] used by the leading professional organizations." *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20,018-01, at 20,022 (Apr. 24, 2002). Because "the SSA declined to adopt any one of [these] specific definitions . . . the introductory paragraph of Listing 12.05 can be met if the individual is found to have, inter alia, deficits in adaptive functioning as defined by any of the four professional organizations." *Durden v. Astrue*, 586 F. Supp. 2d 828, 834 (S.D. Tex. 2008).

9

Beyond this, in *Hancock v. Astrue*, the Fourth Circuit Court of Appeals provided a valuable standard of comparison for assessing an ALJ's findings regarding Prong 1's adaptive functioning requirement. In *Hancock*, the Fourth Circuit upheld the ALJ's finding that the claimant failed to carry the burden of showing deficits in adaptive functioning where the claimant had: (1) "the ability to shop, pay bills, and make change," (2) "takes care of three small grandchildren at a level of care that satisfies the Department of Social Services," (3) "does the majority of her household's chores, including cooking and baking," (4) "is attending school to obtain a GED," and (5) "does puzzles for entertainment." *Id.* at 476.[5]

Additional case law shows that the issue of whether a claimant manifested deficits in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules. *See, e.g., Salmons v. Astrue*, No. 5:10CV195-RLV, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012) (collecting cases). Case law suggests further that literacy is also an important factor. *See Luckey v. U.S. Dep't of Heath & Human Servs.*, 890 F.2d 666, 668-69 (4th Cir. 1989); *Salmons*, 2012 WL 1884485, at *7; *Holtsclaw v. Astrue*, No. 1:10CV199, 2011 WL 6935499, at *4 (W.D.N.C. Dec. 30, 2011); *Rivers v. Astrue*, No. 8:10-cv-314-RMG, 2011 WL 2581447, *4 (D.S.C. June 28, 2011). Similarly, whether the claimant has ever lived independently is a relevant inquiry. *Compare Salmons*, 2012 WL 1884485, at *7 *with Holtsclaw*, 2011 WL 6935499, at *5.

Another guiding factor is whether the claimant has ever provided care for others, or

---

[5] Although the Fourth Circuit found these characteristics sufficient to support a finding of an absence of deficits in adaptive functioning, the Fourth Circuit did not intimate that those (or comparable) capabilities constituted the minimum necessary to uphold such a determination. *See Hancock*, 667 F.3d at 476 & n. 3.

10

whether he himself is dependent on others for care. *Compare Salmons*, 2012 WL 1884485, at *7 (noting claimant was heavily dependent on his mother and was not responsible for the care or supervision of others) and *Holtsclaw*, 2011 WL 6935499, at *4-5 (noting claimant had never lived independently and required a parent's help) *with Hancock*, 667 F.3d at 475-76 (affirming denial of benefits where the claimant managed the household and cared for her three young grandchildren) and *Caldwell v. Astrue*, No. 1:09cv233, 2011 WL 4945959, at *3 (W.D.N.C. Oct. 18, 2011) (claimant assisted in the care of elderly parent). School records and past academic performance are also important indicators of deficits in adaptive functioning prior to age 22. *See Salmons*, 2012 WL 1884485, at *7 ("[F]unctional academic skills is the primary measure of deficits of adaptive functioning before age 22."); *Rivers*, 2011 WL 2581447, at *3 (noting claimant classified as special needs at school, had repeated evaluations in elementary school with IQ scores all in the 50s, and dropped out of school in the ninth grade); *see also Conyers v. Astrue*, No. 4:11-CV-00037-D, 2012 WL 3282329, at *8 (June 29, 2012), *adopted in* 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012) (discussing the claimant's school history).[6]

Additionally, work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, *Luckey*, 890 F.2d at 669, can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22. *Hancock*, 667 F.3d at 475-76 (concluding ALJ's finding that the claimant did not manifest requisite deficit in adaptive functioning to be supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked several jobs); *Harts v. Astrue*, No.

---

[6] Although *Conyers* was addressing Listing 12.05B, the adaptive functioning analysis in that case is instructive even when the issue is whether the Listing 12.05C criteria are met.

0:10–1893–CMC–PJG, 2012 WL 529982, at *6 n. 3 (D.S.C. Jan. 30, 2012) (distinguishing *Luckey* because the ALJ used the claimant's work history as only one factor to support his finding of no significant deficits in adaptive functioning and because the claimant in *Harts* did not otherwise meet the Listing 12.05C criterion of a valid IQ score within the range of 60-70), *adopted and incorporated in* 2012 WL 529980 (D.S.C. Feb.17, 2012). Finally, the tasks a claimant is able to undertake, although not determinative, have been considered in this analysis. *See generally Radford v. Astrue*, No. 5:08-CV-421-FL, 2009 WL 1675958, at *6 (E.D.N.C. June 10, 2009) (finding that the claimant's ability to perform certain tasks was not inconsistent with mild mental retardation); *see, e.g., Hancock*, 667 F.3d at 476 & n. 3 (affirming ALJ's consideration of the claimant's ability to perform tasks such as shopping, paying bills, and making change); *Salmons*, 2012 WL 1884485, at *7 (discussing claimant's inability to do household chores, cook, and drive).

## II. The ALJ's 12.05C Analysis Is Not Susceptible to Judicial Review.

In this case, the ALJ's 12.05C assessment, particularly of Prong 1, was so truncated that it is impossible to review for substantial evidence. The ALJ's entire analysis of Prong 1 amounts to no more than a statement that Plaintiff's standardized test scores demonstrate that he is not mildly mentally retarded. As demonstrated in Section I above, there is not a hard and fast rule regarding a Prong 1 analysis and it essentially turns on the totality of the many circumstances and factors described above. In concluding that remand for further inquiry is proper here, the undersigned notes the following.

First, while Plaintiff scored in the fifty-third percentile in spelling, this in and of itself is

12

insufficient to analyze the record relevant to the status of Plaintiff's early adaptive functioning prior to age 22. (Tr. 228.) In fact, Plaintiff's standardized test scores were quite poor.

For example, in 1981, Plaintiff's vocabulary and comprehension were, respectively, in the thirteenth and twenty-third percentiles nationally, leaving him in the eighteenth percentile overall nationally in reading and placing him slightly below a fourth grade equivalency level despite being in sixth grade. (Tr. 228.) His language mechanics and expression were, respectively, in the eighth and fifth percentiles nationally, leaving him in the fifth percentile overall nationally in language, and placing him at a second grade equivalency level despite being in sixth grade. (*Id.*) His mathematical subcategories (which are illegible) left him in the thirty-seventh percentile and eighteenth percentile nationally, placing him at the fourth grade equivalency level despite being in the sixth grade. (*Id.*) Overall, he was found to be in the third percentile nationally for "Total Reading," the twelfth percentile nationally for spelling, the fourteenth percentile nationally for "Total Language," the twentieth percentile nationally for "Total Mathematics," and the ninth percentile nationally for "Total Battery." (*Id.*)

Then, in ninth grade, when Plaintiff was seventeen years old, he was in the eighteenth percentile nationally for "Total Reading" (a sixth grade equivalency); the fourth percentile nationally for "Spelling" (a third grade equivalency), the third percentile nationally for "Total Language" (a third grade equivalency), the seventh percentile nationally for "Total Mathematics" (a fifth grade equivalency) and the sixth percentile for "Total Battery" (a fourth grade equivalency).[7] (*Id.*) The ALJ's truncated assessment of the record on this issue is

---

[7] Plaintiff was born February 13, 1968, so in the Spring of 1985 during Plaintiff's ninth grade year when this test was given, he would have been seventeen years old. (Tr. 44, 228-229.)

13

simply too vague to permit judicial review. Moreover, the undersigned agrees with the case law from other courts in the Fourth Circuit that have concluded that remand is proper under similar circumstances. *See, e.g., Lane v. Astrue,* No. 2:11-CV-33-FL, 2012 WL 3241102, *4 (E.D.N.C. July 12, 2002) (rejecting ALJ's conclusion that national percentile "scores of 23rd, 24th, 41st and 43rd percentiles" and "grade equivalent scores [ ] primarily in the late 3rd grade or early 4th grade levels, compared to his status as a 5th grader" did "not reflect mental retardation") *adopted by* 2012 WL 3332413 (E.D.N.C. Aug. 7, 2012); *Holtsclaw,* 2011 WL 6935499, at *4 (concluding that remand was proper, in part because "[a]lthough the subjects cannot be discerned, on achievement testing in 8th grade she appears to have scored in the 5th, 15th, 7th and 11th percentile overall, while in 9th grade, she scored in the 6th, 57th, 17th, 7th and 10th overall").

Second, while it is true that there is no specific finding by any doctor on the record that Plaintiff meets Listing 12.05C, there are a number of points in the record suggesting that Plaintiff may indeed suffer from at least mild mental retardation. For example, a consulting examiner, Dr. Jake E. Ricketson, Psy.D., diagnosed Plaintiff as having "Mild mental retardation, provisional" (Tr. 361) and Dr. Thomas Graham from Daymark Recovery Services repeatedly diagnosed Plaintiff with "probable mild mental retardation" (Tr. 462, 467, 469.) Though the ALJ mentioned both doctors in his Decision he did not specifically address these diagnoses. (Tr. 31-32.) Consequently, it is unclear whether the ALJ failed to consider these diagnoses or instead whether he tacitly rejected them in whole or in part.

Third, there are other factors that the ALJ may have failed to take into consideration in

14

his truncated Prong 1 analysis. Plaintiff was in special education classes (with mixed results) (Tr. 59, 224-25, 227, 293),[8] appears to have failed at least the seventh grade (*id.* at 224-25), and dropped out of school (or was perhaps expelled) in ninth grade at the age of 17 (Tr. 44, 224-25, 227, 265). There are also references in the record to Plaintiff's spotty employment record (Tr. 48-54, 248), his homelessness (Tr. 61, 334), and a seven year period of incarceration for arson (Tr. 46, 206-08, 302). The ALJ did not mention any of these factors—or, for that matter, any factors beyond Plaintiff's standardized test scores—in his 12.05C analysis. While there is no per se obligation for an ALJ to mention all of these factors, it is the obligation of the ALJ to chart a logical path between his factual findings and legal conclusions so that this Court can undertake a review for substantial evidence.[9]

Fourth, given the ALJ's failures at step three of the sequential evaluation, the undersigned cannot conclude that the ALJ's determination that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (Tr. at 26) is supported

---

[8] The record contains a letter from the Randolph County Schools Exceptional Children Department stating that "the Exceptional Children records for this student were purged and destroyed in compliance with North Carolina state guidelines. Therefore, no EC records exist for this individual." (Tr. 293.)

[9] The undersigned is well-aware that an ALJ's omission in one part of a legal analysis may be rendered harmless where the analysis omitted was conducted elsewhere in the Decision. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (concluding "the ALJ's error would be harmless if he properly analyzed credibility elsewhere"). However, that doctrine does not call for a different outcome here. Here, the ALJ noted in his 12.05D analysis that Plaintiff cleaned the house (*i.e.*, vacuumed, washed dishes, and took out the trash), attended church, went out to eat, watched television, and visited family members. (Tr. 26-27.) The ALJ also noted in his 12.05A analysis that Plaintiff did not report needing help in areas such as toileting, eating, dressing, or bathing. (*Id.* at 28.) Nevertheless, these findings do not constitute a sufficient 12.05C, Prong 1 analysis in this case, especially given the ALJ's failure to meaningfully engage with the record on Plaintiff's performance in school, which is a considerable omission not rectified elsewhere in the Decision.

15

by substantial evidence. Nor can the undersigned find that such error is harmless because the Social Security regulations state that if a person's impairments meet or equal a Listing, he is disabled under the regulations and would be entitled to benefits with no further analysis required. *Vest v. Colvin*, No. 5:13CV00067, 2014 WL 4656207, at *27 (E.D. Va. Sept. 16, 2014) ("The mere fact that an ALJ properly found a claimant capable of past work at step four or of other work at step five does not render an error at step three harmless; otherwise, step three errors would never be reversible alone, which is clearly not the case."). Accordingly, the undersigned concludes that remand is proper.

None of this is to say that Plaintiff is necessarily disabled under 12.05C, or disabled at all. Nevertheless, upon remand the ALJ should take into consideration the evidence relevant to 12.05C and chart a logical path between his factual findings and legal conclusions. Finally, at this time the undersigned declines consideration of any additional issues Plaintiff intended to raise in his pleadings. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision as no preclusive effect, as it is vacated and the new hearing is conducted de novo).

## V. Plaintiff's "Motion to Amend Improper Party"

As noted, Defendant has also filed a Motion to Dismiss Improper Parties. (Docket Entry 6.) Defendant requests that this Court dismiss the claims against the improperly named Defendants: the Social Security Administration and Judge Frederick A. Johnson. (Docket Entry 7 at 1.) Defendant's Motion should be granted. Courts have consistently interpreted

16

42 U.S.C. § 405(g)—the governing statue as to this issue—to mean that in cases seeking judicial review under this statute, the only proper defendant is the Commissioner.[10]

Plaintiff's "Motion to Amend Improper Party," however, should be denied. (Docket Entry 19.) Plaintiff wants to substitute Judge Johnson—who does not appear to have any relation to Plaintiff's applications for benefits—for the ALJ that rendered his decision in this case, Emanuel C. Edwards. However, as explained, the only proper defendant here is the Commissioner. Consequently, this Motion should be denied.

## VI. CONCLUSION

In light of the above, the Court **RECOMMNEDS** that Defendant's Motion to Dismiss Improper Parties (Docket Entry 6) be **GRANTED** and that Plaintiff's "Motion to Amend Improper Party" be **DENIED** (Docket Entry 19). The Court **RECOMMENDS** further that the record be amended to reflect the Commissioner as the only defendant in this action.

---

[10] *See e.g., Bethea v. Astrue*, 455 F. App'x 145, 146 (3d Cir. 2011) (no improper substitution of the Commissioner of Social Security as defendant instead of SSA); *Womack v. Comm'r of Dep't of Med. Assistance Servs.*, 67 Fed. App'x 847, 848 (4th Cir. 2003) ("[the plaintiff's] claim against the [defendant] was correctly dismissed because claims arising under § 405(g) must be brought against the Commissioner, not an arm of the state, such as [Defendant], which is protected by Eleventh Amendment immunity."); *Bell v. Comm'r of Soc. Sec.*, No. 1:13-cv-347 GSA, 2013 WL 1623806, at *4 (E.D. Cal. Apr. 15, 2013) (relying on 20 C.F.R. § 422.210(d) and concluding that the Commissioner of Social Security is the proper defendant, not the "Office of Disability Adjudication and Review"); *Williams v. N.Y. State Dep't of Soc. Serv.*, No. 1:07-CV-815, 2007 WL 2780382, *1 (W.D. Mich. Sept. 18, 2007) (holding that to the extent the claim was brought under § 405(g), the plaintiff "fails to state a claim because the Commissioner of Social Security is the proper defendant in such an action"); *Van Buren v. Soc. Sec. Admin.*, NO. S-06-2029 FCD GGH PS, 2006 WL 3348608, at *2 (E.D. Cal. Nov. 17, 2006) ("Plaintiff has not named the proper defendant. The party named, Social Security, is protected by sovereign immunity. The proper defendant is Jo Anne Barnhart, Commissioner of Social Security."); *Keesing v. Apfel*, 124 F. Supp. 2d 134, 135 (N.D.N.Y. 2000) (stating the only proper defendant in a § 405(g) action is the Commissioner of Social Security).

Additionally, after a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 17) should be **GRANTED** and Defendant's Motion for Judgment on the Pleadings (Docket Entry 21) be **DENIED**. To the extent that Plaintiff's Motion seeks an immediate award of benefits, it should also be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
August 5, 2015